Ruperto López, Plaintiff and Appellee, *v.* Félix Bravo López and Gloria Bravo Rodríguez, Defendants and Appellants.

No. 9512. Argued January 14, 1948.—Decided March 29, 1948.

---

*García Méndez & García Méndez* for appellants. *Héctor Reichard* for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

The defendants Félix Bravo López and Gloria Bravo Rodríguez have appealed from a judgment, rendered by the District Court of Aguadilla on August 12, 1946, declaring the plaintiff Ruperto López an acknowledged natural child of Juan Ramón Bravo, known as Nené Bravo, with all the rights pertaining to such a status.

In support of their appeal they have assigned three errors, the first of which is that the lower court erred "in deciding that oral evidence was admissible to prove the birth of the child without having first resorted to the primary evidence of the birth register, in accordance with the Law of Evidence." There was no such error.

The age of a person is not a part of his civil status. *Mercado* v. *American Railroad Co.*, 61 P.R.R. 222, 228. However, as filiation must be determined in accordance with the law in force at the time of the birth, establishing the age of a person who claims to be a natural child of another is at least important as to that particular. *Mercado* v. *Heirs of Mangual*, 35 P.R.R. 388; *Méndez* v. *Martínez*, 21 P.R.R. 238. In cases of this kind the testimony of the mother as to the age of her child is not secondary evidence. *People* v. *Valladares*, 51 P.R.R. 634; *People* v. *Rodríguez*, 47 P.R.R. 84. Cf. *People* v. *Millán*, 35 P.R.R. 817.

On the other hand, when a party objects to the admission of testimony of the witnesses for the adverse party as to the age of the person whose filiation is in question, and later on that same party cross-examine the witnesses for the plaintiff or examine his own witnesses, on that point, he is held to have waived the objection raised regarding the age or date of birth of said person. *Assise* v. *Curet,* 22 P.R.R. 518; cf. *People* v. *De Jesús,* 18 P.R.R. 575. In the instant case, it is unquestionable that the defendants objected to allowing plaintiff's mother and some other witnesses to testify regarding the age of Ruperto López at the time of the trial or regarding the date of his birth. However, the defendants themselves repeatedly cross-examined the witnesses for the plaintiff as to his age and also examined their own witness Jenaro Soto on the same point. For instance: While cross-examining plaintiff's witness, Venancio Torres, they asked him: "How old is Ruperto?," and the witness answered: "Forty years." (Tr. of Ev., p. 40.) The defendants asked the witness Rafael Feliciano: "In what year was Doña Rosario López pregnant with Ruperto López?" (p. 71). Subsequently, they asked plaintiff's witness, Francisco Cordero: "In what year was Ruperto born?" and he answered: "Ruperto was born in 1906." (P. 87.) When cross-examining the plaintiff himself, the defendants asked him: "How old do you say you are?" and he answered: "I was born in 1906, on March 16." The defendants insisted, and asked the plaintiff: "What is your age?" and he replied: "Forty years." (P. 104.) Finally, the defendants put the following question to their own witness Jenaro Soto: "Since he was born until to-day, which is a lapse of forty years, did you ever know whether Nené Bravo maintained with Ruperto López the relationship of father and child?" to which the witness Soto answered: "Never." (Pp. 132–133.)

Not only because in actions of this kind a person who has exact knowledge of the fact of birth may be properly

allowed to testify regarding the age of the person whose filiation is involved, but also because the defendants, as we have already indicated, waived the legal objection raised by them, we reach the conclusion that the first error assigned has not been committed.

Let us now turn to the second assignment. It is to the effect that "the District Court of Aguadilla erred in sustaining the complaint of filiation of a supposed child born among various illegitimate children by several men, without the date of his birth having been determined in any convincing manner." We have already stated, that in order to determine the filiation of a person it is imperative to resort to the law in force at the time of his birth. Since, according to the record, the plaintiff was born on March 16, 1906, the law which governs the case before us is § 189 of the Civil Code, as the same appeared in the Revised Statutes of 1902. Said Section provided that:

"Section 189.—A father is obliged to recognize his illegitimate child in the following cases:

"1. Where there be an authentic statement in writing made by him expressly recognizing its paternity.

"2. When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

"3. When the mother was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while his parents were engaged to be married, (*relaciones amorosas*)."

The essential averments of the complaint are that the plaintiff is of legal age; that on June 8, 1945, the defendants were declared acknowledged natural children of Juan Ramón Bravo, who died on April 5, 1945; that the decedent had a love affair with plaintiff's mother in or about 1905, and that, subsequently, as a result of their intimate relations the plaintiff Ruperto López was born on March 16, 1906, who has been

in the uninterrupted possession of the status of an·acknowledged natural child of Juan Ramón Bravo, the latter having maintained and supported him, and accorded to him, publicly and privately, the intimate and open treatment of an acknowledged child, taking care of his education and health, keeping him in his own home; and that his heirs, the defendants herein, have treated the plaintiff, before and after the death of Juan Ramón Bravo, as an acknowledged natural child of the latter.

The defendants in their answer denied the essential averments of the complaint and prayed that the same be dismissed. Since the second error assigned is specifically ·directed to the weighing of the evidence by the lower court, we will at once make a brief summary of the testimony of each witness.

*Rosario López,* is plaintiff's mother. She had intimate relations with Juan Ramón Bravo, known as Nene Bravo, and, as a result thereof, the plaintiff was born. She lived with Juan Ramón Bravo for 4 or 5 years and when Ruperto became older, Bravo always helped him, paid for his sickness expenses, took care of him, took him to baptisms and parties, supported him, took him to his home, and all his relatives treated the boy as if he were related to them; and whenever Ruperto went to Bravo's house, he invited him to come in and gave him his blessing.

*Venancio Torres,* 75 years of age, who lived in the same ward in which plaintiff's mother lived, was acquainted with her and also with Juan Ramón Bravo, and he knew that they had had intimate relations, and that she was Bravo's mistress. Rosario bought from the witness a hut, in which she gave birth to Ruperto, and Juan Ramón Bravo shortly thereafter passed by and told him to take care of them, referring to Doña Rosario and the child; that he saw that Bravo visited Ruperto and treated him as a son and that when Ruperto became older, Bravo always took care of him and supported him.

*Rafael Feliciano,* alleged to be a natural brother, although not acknowledged by Juan Ramón Bravo, testified similarly as Venancio Torres, and further stated that Juan Ramón Bravo himself had told him that Ruperto was his child.

*Francisco Cordero* knew Ruperto López for about 38 years and stated that he was a *compadre* of Juan Ramón Bravo, being an intimate friend of his. He knew Rosario López when she was Bravo's friend and recalls that several times Bravo took Ruperto to the witness's house. Bravo always treated the plaintiff as his child, gave him his blessing, and introduced him as such.

*Ruperto López,* the plaintiff, stated that he knew Juan Ramón Bravo, as he was his father; that Bravo always helped him and took him to lunch to his house, and that he stayed with him 2 or 3 days. Bravo always treated him as a true son of his.

*Luis Soriano, Jenaro Soto, Félix Bravo, Juan S. Bravo,* and *Justo Méndez Cabrera* testified for the defendants, and the purpose of their testimony was to controvert the statements of plaintiff's witnesses. According to them, Juan Ramón Bravo and Rosario never had intimate relations; Bravo had never held Ruperto López as his son, either publicly or privately, and that the only children whom he had considered as such on all occasions had been Félix and Gloria, defendants herein; and he had so stated, for the last time, shortly before his death.

It is unquestionable that Rosario López, plaintiff's mother, possibly by reason of her advanced age—from the record it appears that at the time she testified she was 85 or 90 years old—and perhaps due to the fact that she was an illiterate woman who had spent all her life in a rural section, made some omissions in stating in the first instance that she had only had 3 children, namely, Ruperto, Isabel, and Agueda, and afterwards, on cross-examination, she corrected herself on

this particular. But at all times she testified without hesitation as to having cohabited with Juan Ramón Bravo for 4 or 5 years, in or about 1905 and succeeding years, and as to having given birth to his children Ruperto, Isabel, and Agueda, the last two having died. It is also true that she admitted having had children by Francisco Bravo, prior to her cohabitation with Juan Ramón Bravo, a nephew of the former; that she also admitted having lived with Fabián Rodríguez and having had several children by him after her relations with Juan Ramón Bravo ceased; that she also accepted having had intimate relations with Santiago Muñoz, and not having had any children by him; and that subsequently she resumed her illicit relations with Francisco Bravo But all this does not detract from her assertion that she had intimate relations with Juan Ramón Bravo for 4 or 5 years and that the plaintiff Ruperto López was born as the offspring of those relations.

It is also undeniable that Venancio Torres, Rafael Feliciano, and Francisco Cordero repeatedly stated that they had no recollection when they were asked about the other men who had cohabited with Rosario López or about her other children. But in their testimony concerning her relations with Juan Ramón Bravo, the birth of Ruperto as a result of such relations, and the conduct of Juan Ramón Bravo towards the plaintiff, there was hardly any hesitation.

Be that as it may, it was incumbent on the lower court to weigh the evidence introduced by the parties and to resolve the conflict which arose therein. It did so, and from a close examination of the transcript of the evidence we are convinced that such weighing was correct. The proof established not only the essential allegations of the complaint, but also the filiation of Ruperto López as a natural child of Juan Ramón Bravo under the law in force at the time of the birth of the former. See *Bernier* v. *Heirs of Honoré,* 39 P.R.R. 177, and *Román* v. *Heirs of González,* 38 P.R.R. 362.

The third and last error assigned is that the judgment rendered is against the whole evidence introduced; that the lower court rendered its decision relying on a so-called "strict summary" of the supposedly more important parts of the testimony of the witnesses; and that in the weighing of the evidence there has been passion, partiality, and prejudice, and that evidently the most absurd and evident error has been committed. We do not agree. The careful examination we have made of the evidence introduced by the parties convinces us, we repeat, that the lower court acted correctly in weighing the whole evidence as it did. We fail to find any indication of passion, prejudice, or partiality, or manifest error in such weighing. *Mercado* v. *Heirs of Mangual, supra; Latorre* v. *Cruz,* 67 P.R.R. 696, 705.

Under those circumstances, the judgment appealed from should be affirmed.